IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARVIN E. BUGGS,                Petitioner,<br><br>v.<br><br>ROBERT HOUSTON<br>                Respondent. | 4:05CV3115<br><br>MEMORANDUM AND ORDER |

This is an action for habeas corpus relief pursuant to 28 U.S.C. § 2254. Marvin E. Buggs alleges violations of his Constitutional rights in connection with his conviction of manslaughter, pursuant to a plea agreement, in the District Court of Lancaster County, Nebraska, in 2002. The petitioner essentially alleges ineffective assistance of counsel in: (1) advising petitioner to enter into a plea agreement without adequately familiarizing himself with relevant facts and law (Claim 1); (2) advising petitioner to plead no contest without an adequate factual basis to support the plea (Claim 2); and (3) in failing to move to suppress evidence from the petitioner's home and vehicle (Claim 3). He argues that the evidence overwhelmingly implicated the petitioner's co-defendant, Steven Tucker, in the death of the victim and that Tucker had entered a plea of guilty to the crime before the petitioner entered his plea.

By previous order, this court granted the petitioner leave to brief the merits of Claims 1 and 2 and to address the issue of procedural default with respect to Claim 3. Filing No. 16. The matter has been fully briefed.

**I.    Procedural History**

Petitioner was originally charged in the Lancaster County District Court with tampering with physical evidence, in violation of Neb. Rev. Stat. § 28-922, accessory to a felony, in

violation of Neb. Rev. Stat. § 28-204, and two counts of being a habitual offender under Neb. Rev. Stat. § 29-2221.  Filing No. 11, Part A, State v. Buggs, Case No. 01-586, Bill of Exceptions, Transcript of Proceedings on Feb. 12, 2002, Feb. 25, 2002, and April 22, 2002 ("Plea Proceedings Tr.") at 25.  Pursuant to a plea agreement, petitioner entered a plea of "no contest" to an amended information charging him with one count of manslaughter, in violation of Neb. Rev. Stat. § 28-305.  *Id.*  He was sentenced to 20 years in prison, to be served consecutively to any other sentence.[1]  *Id.* at 91.

Buggs challenged his sentence as excessive on appeal.  Filing No. 11, Part D, State v. Buggs, Case No. A-02-570, Bill of Exceptions, Brief on Appeal.  The Nebraska Court of Appeals sustained the state's motion for summary affirmance, and the Nebraska Supreme Court denied the petitioner's petition for further review on January 15, 2003.  *Id.*, Docket Sheet at 2.  Buggs filed a petition for post-conviction relief in Lancaster County District Court in 2004.  Filing No. 11, Part F, State v. Buggs, Case No. A04-1031, Clerk's Transcript, First Amended Verified Motion to Vacate and Set Aside Conviction.  He asserted:  (1) ineffective assistance of counsel in failure to investigate; (2) lack of a factual basis for the plea; (3) the plea was not knowing and voluntary; and (4) error in failure to suppress illegally seized evidence.  *Id.,* Order dated August 30, 2004.  The Lancaster County District Court found that petitioner's counsel's performance had not been deficient, petitioner had not shown prejudice, and there was a factual basis for the plea.  *Id.* at 12-13.  The court also found that Buggs had knowingly and voluntarily entered into the agreement.  *Id.*  Both the Nebraska Court of Appeals and the

---

[1] Buggs was also charged, in a separate action, with being a felon in possession of a dangerous weapon and being a habitual criminal.  He was serving a ten-year sentence on that conviction at the time of the plea proceedings in this case.

2

Nebraska Supreme Court summarily affirmed the Lancaster County Court. Filing No. 11, Part D, Docket Sheet at 2. Buggs timely filed this action for federal habeas corpus relief under 28 U.S.C. § 2254.

**II.     Facts**

The record shows Buggs expressed dissatisfaction with his counsel at his change of plea hearing. *See* Plea Proceedings Tr. at 16-17. New counsel was appointed to represent him and a continuance was granted to enable the new counsel to review police reports in connection with the case. *Id.* at 19. At the continued plea hearing, the prosecutor recounted the state's evidence to establish the factual basis for the plea. *Id.* at 49-59. The state's evidence would show that both Buggs and Tucker were present at the murder, each had made inconsistent and contradictory statements with respect to the crime, DNA evidence established that Buggs had sex with the victim on the night she was killed, the victim died as the result of strangling during a sexual assault, and Buggs admitted that he helped to dispose of the body. *Id.* During the plea colloquy, the court ascertained that Buggs understood the terms of the agreement and freely and voluntarily entered into the agreement. *Id.* at 34-41.

At sentencing, defense counsel stated:

> First, I want to address why Marvin Buggs, a man who has always, without explanation, said that he did not kill Cheryl Walter, entered a no contest plea to manslaughter. Let's do the math. He was charged with felon in possession of a deadly weapon and habitual criminal, to face 10 to 60 years. He was charged with tampering with physical evidence and being a habitual criminal, again 10 to 60 years. Manslaughter, by its statutory definition, carries 1 to 20. He's facing from 1 to 20.

*Id.* at 70-71. Defense counsel also argued that Steven Tucker was the individual guilty of choking Cheryl Walter to death. *Id.* at 73. He argued that evidence showed Tucker was a violent sexual pervert and was the more culpable of the two. *Id.* at 75-77.

The court noted, at sentencing, that the three original charges would carry a combined mandatory minimum sentence of 30 years. *Id.* at 82. The court further noted that there was evidence that Steven Tucker had stated that "he and another guy" had killed Ms. Walter. *Id.* at 84. The court also referred to DNA evidence that showed that Buggs had sexual contact with the victim. *Id.* at 85. The court also considered Buggs's signigicant criminal history. *Id.* at 89. The court found:

> Ms. Walter was killed by one or more persons by what's been described as active strangulation. When Ms. Walter was killed she was at the home of Mr. Buggs and his wife. Also present in the home were Buggs his wife and Steve Tucker. Mr. Buggs and Mr. Tucker each denies any responsibility for the killing of Ms. Walter.

*Id.* at 90. With respect to relative culpability, the court noted that Tucker had entered a plea of no contest to a charge of manslaughter with a habitual criminal enhancement and had been sentenced to thirty-five to forty years in prison. *Id.* The court concluded that Buggs should be sentenced to "not less than 20 nor more than 20" years, consecutive to the sentence he was serving at the time. *Id.* at 91.

### III.   Discussion

#### a.   AEDPA Standards

Buggs filed his habeas corpus petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2241-54. Under the AEDPA, an application for writ of habeas corpus can be granted on a claim that was adjudicated on the merits in state court only if the adjudication either resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of

4

the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2). The "contrary to" and "unreasonable application" clauses have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000).

Under the "contrary to" clause, a federal habeas corpus court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or "if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A federal court may not issue the writ simply because it concludes, in its independent judgment, that the relevant state court decision applied clearly-established federal law erroneously or incorrectly. *Bucklew v. Luebbers*, 436 F.3d 1010, 1016 (8th Cir. 2006). Rather, that application must also be unreasonable. *Id.*; *Schiro v. Landrigan,* — U.S. —, —, 127 S. Ct. 1933, 1939 (2007) (noting that the AEDPA changed the standards for granting federal habeas relief— the determination that a state court's interpretation is unreasonable is a substantially higher threshold than the determination that a decision is incorrect).

The "unreasonable determination of facts" provision of 28 U.S.C. § 2254(d)(2) must be read together with 28 U.S.C. § 2254(e)(1), which states:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). Thus, a state court's factual determinations "are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 324 (2003) (statutory citations omitted). A petitioner must rebut the presumption of correctness with clear and convincing evidence. *Middleton v. Roper,* 455 F.3d 838, 854 (8th Cir. 2006); 28 U.S.C. § 2254(e). A state court decision amounts to an objectively unreasonable determination of the facts if it is shown that the state court's presumptively correct factual findings are not supported by the record. *Jones v. Luebbers,* 359 F.3d 1005, 1011 (8th Cir. 2004).

The AEDPA, however, does not "require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied." *Panetti v. Quarterman,* — U.S. —, —, 127 S. Ct. 2842, 2858 (June 28, 2007). Nor does the AEDPA "prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts 'different from those of the case in which the principle was announced.'" *Id.* (*quoting Lockyer v. Andrade,* 538 U.S. 63, 76 (2003). The statute recognizes, to the contrary, that even a general standard may be applied in an unreasonable manner. *Id.*; *see, e.g., Williams v. Taylor,* 529 U.S. at 391 (finding a state-court decision was both "contrary to" and involved "an unreasonable application of clearly established Supreme Court law).

If a state court's adjudication of a claim depends on an unreasonable application of federal law, the requirement set forth in § 2254(d)(1) is satisfied and a federal court must then resolve the claim without the deference AEDPA otherwise requires. *Panetti v. Quarterman,* —

6

U.S. —, —, 127 S. Ct. 2842, 2858 (June 28, 2007); *see also Wiggins v. Smith,* 539 U.S. 510, 534, (2003) (performing the analysis required under *Strickland's* second prong without deferring to the state court's decision because the state court's resolution of *Strickland's* first prong involved an unreasonable application of law).

### b. Procedural Default

The state asserts the defense of procedural default with respect to Claim 3 (ineffective assistance in connection with suppression of evidence). The state acknowledges that the petitioner asserted a similar claim, challenging counsel's failure to move for suppression of statements, to the Nebraska Court of Appeals on direct appeal and in postconviction proceedings. The court need not decide the thorny issue of whether these references constitute adequate presentment of the petitioner's claims. "Although the procedural bar issue should ordinarily be resolved first, judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo,* 169 F.3d 1155, 1162 (8th Cir. 1999) (en banc); *Lambrix v. Singletary,* 520 U.S. 518, 525 (1997); *Chambers v. Bowersox,* 157 F.3d 560, 564 n. 4 (8th Cir.1998) ("The simplest way to decide a case is often the best.").

The court finds that Buggs cannot prevail on this claim. Buggs faults his trial counsel for failing to file a motion to suppress evidence. In order to prevail on that claim, Buggs is obliged to show two things: first, he must demonstrate that the seizure of evidence was illegal, such that his attorney would have been successful had he sought suppression of the evidence; and second, given that he was convicted based on a plea, he must show that, had the evidence been suppressed, it is reasonably likely that he would have gone to trial rather than enter a plea

of guilty. *Hill v. Lockhart,* 474 U.S. 52, 59 (1985); *Witherspoon v. Purkett,* 210 F.3d 901 (8th Cir. 2000). Buggs has made no such showing. Accordingly, the court will deny the petitioner habeas corpus relief with respect to Claim 3.

### c. Ineffective assistance of counsel

Buggs's entitlement to federal habeas relief on his other claims turns on showing that the state court's resolution of his claims of ineffective assistance of counsel "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See, e.g., Rompilla v. Beard,* 545 U.S. 374, 381 (2005). Ineffective assistance is deficient performance by counsel that results in prejudice to the defendant. *Id.* (applying standard announced in *Strickland v. Washington,* 466 U.S. 668, 687 (1984)). It is beyond question that the rule set forth in *Strickland* qualifies as "clearly established Federal law, as determined by the Supreme Court of the United States." *Williams,* 529 U.S. at 391.

Under *Strickland,* to show that counsel's performance was deficient, the defendant must show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. *Strickland,* 466 U.S. at 687. Performance is "measured against an 'objective standard of reasonableness . . . under prevailing professional norms.'" *Rompilla,* 545 U.S. at 381 (*quoting Strickland,* 466 U.S. at 688). The court must determine whether, in light of all the circumstances, counsel's acts or omissions were "outside the wide range of professionally competent assistance," recognizing that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 690. "Strategic

choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* To show that the deficient performance prejudiced the defense, a defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

In circumstances where the defendant denies that he has committed a crime, he is nonetheless entitled to enter a plea of guilty or no contest, if the plea "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31 ("[t]hat [a defendant] would not have pleaded except for the opportunity to limit the possible penalty does not necessarily demonstrate that the plea of guilty was not the product of a free and rational choice, especially where the defendant was represented by competent counsel whose advice was that the plea would be to the defendant's advantage.").

Petitioner has not shown that his counsel's actions in negotiating a plea fell below an objective level of reasonableness. The plea agreement was a strategic and tactical decision that was reasonable under the circumstances. The record shows that Buggs made an intelligent and voluntary choice between competing courses of action by entering into the plea agreement and pleading no contest to manslaughter. The plea hearing transcript supports the conclusion that Buggs understood his *Alford* plea and desired the benefits it yielded. He chose not to risk conviction and sentencing on other charges that carried a combined mandatory minimum sentence of thirty years in exchange for a plea to a charge that carried a maximum sentence of twenty years.

Similarly, Buggs has not shown that his counsel's actions resulted in prejudice to him. In reviewing the record, it is apparent that, although Buggs maintained that he did not kill the victim, the plea agreement was nevertheless in his best interest because of the exposure he faced, as a habitual criminal, to a lengthy term of incarceration under the original charges. Buggs has not alleged any facts in his petition for habeas corpus relief that were not known to him prior to the entry of his plea. Also, review of the record shows that, whether he maintained his innocence of the murder or not, there was strong evidence that he participated in a sexual assault of the victim and that he disposed of her body. DNA evidence linked Buggs to the crime and he faced a significant risk of conviction as an aider and abettor. *See State v. Contreras*, 268 Neb. 797, 797, 688 N.W.2d 580, 581 (2004)(a person who aids or abets another individual in committing any offense may be prosecuted as if he or she were the principal offender).

After carefully reviewing the record, the court finds that petitioner should be denied habeas corpus relief. Accordingly,

IT IS ORDERED:

1. Petitioner's action for habeas corpus relief is denied; and

2. A Judgment of dismissal will be entered by separate order this date.

DATED this 20th day of August, 2007.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge